UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/03/2023

HELIO LOGISTICS, INC. d/b/a NEXTMED,

                    Plaintiff,

    -against-

APOORVA MEHTA, CLOUD HEALTH SYSTEMS
LLC d/b/a SUNRISE HEALTH, and TEJASVI SINGH

                 Defendants.

No. 22-cv-10047 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

On December 20, 2022, Plaintiff Helio Logistics, Inc. d/b/a NextMed ("Plaintiff" or "NextMed") submitted to the Court an Order to Show Cause for a Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction (the "Application"). (ECF No. 26.) The Court granted Plaintiff's Application that same day and set a Show Cause Hearing for December 22, 2022 (the "Hearing"). (ECF No. 26.) Defendants Mehta and Sunrise, and Defendant Singh, each opposed Plaintiff's Application, filing separate Cross Motions to Immediately Dissolve the December 20 Order to Show Cause (ECF Nos. 27 and 30, respectively).

Specifically, the Application temporarily restrained Defendants, and anyone acting in concert with them, from:

    (1) using, disclosing, selling, copying, duplicating, or otherwise employing Plaintiff's trade secrets, including through using or employing any documents, files, platforms, websites, systems, or other information that is derived from Plaintiff's trade secrets; and

1

(2) erasing, replacing, destroying, transferring, moving, or otherwise disposing of Plaintiff's trade secrets from their present location, absent further order of this Court.

The Application also ordered limited, expedited discovery, including three (3) depositions and up to ten (10) requests for production of documents on Defendants. (ECF No. 26.)

In its Application, Plaintiff further sought a preliminary injunction restraining Defendants from (1) and (2), *supra*, in addition to restraining Defendants from:

(3) making available or otherwise providing its websites, currently at https://www.findsunrise.com/ and https://app.findsunrise.com/, or any variations thereof, to the public, including to former, current, and prospective customers and investors, absent further order of this Court; and reproducing, counterfeiting, copying, or colorably imitating Plaintiff's Marks and applying such reproductions, counterfeits, copies, or colorable imitations to digital images, labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising goods or services. (*Id.*)

The Court has carefully reviewed the parties' submissions and considered the arguments that each party made at the in-person hearing held on December 22, 2022. (ECF No. 43.) For the following reasons, Defendants Motions are GRANTED and the Application is dissolved, without prejudice for renewal upon an adequate showing of personal jurisdiction.

## FACTUAL BACKGROUND

The following facts are taken from the parties' submissions, including Plaintiff's Verified Amended Complaint ("AC") (ECF No. 22), Plaintiff's Declaration of Robert Epstein ("Epstein

Decl.") (ECF No. 35), Plaintiff's Memorandum of Law in Support of Plaintiff's Application ("Plf. Mem.") (ECF No. 33), Defendants Mehta and Sunrise's Declaration of Apoorva Mehta ("Mehta Decl.") (ECF No. 29), Defendants Mehta and Sunrise's Memorandum of Law in Support of Their Cross Motion to Dissolve the December 20 Order to Show Cause ("Defs. Mem.") (ECF No. 28), Defendant Singh's Memorandum of Law in Support of his Cross Motion to Dissolve the December 20 Order to Show Cause ("Def. Mem.") (ECF No. 31), and Defendant Singh's Declaration of Tejasvi Singh ("Singh Decl."). (ECF No. 32.)

The following facts are undisputed unless otherwise noted. *See Park Irmat Drug Corp. v. OptumRx, Inc.* 152 F.Supp.3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for [a] preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence."); *see also 725 Eatery Corp. v. City of New York*, 408 F.Supp.3d 424, 455 (S.D.N.Y. 2019) (quoting *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)) (noting that, for purposes of a preliminary injunction, "a party is not entitled to have the court accept its untested representations as true if they are disputed").

### *Founding of NextMed and Initial Interest from K5 Global*

In August 2020, Robert Epstein ("Epstein") founded NextMed ("Plaintiff"), a healthcare startup connecting doctors and patients seeking weight-loss treatments and invited Defendant Tejasvi Singh ("Singh") to join as a cofounder and business advisor. (AC ¶¶ 30−31, 33−34; Epstein Decl. ¶¶ 2-3, 6-7.). Singh signed a non-disclosure and confidentiality agreement in his capacity as an advisor. (AC ¶ 34, Ex. A ("Advisor Agreement")); Epstein Decl. ¶ 6.) Singh's role as an advisor included finding investments for Plaintiff. (AC ¶ 34; Epstein Decl. ¶ 6.) Although Singh left Plaintiff as a cofounder in the Spring of 2021, he remained an advisor to Plaintiff at least through August of 2022. (AC ¶¶ 41−43, 57; Epstein Decl. ¶¶ 11, 21.)

After Singh left Plaintiff as a cofounder, Epstein headed the company. (AC ¶¶ 44, 47; Epstein Decl. ¶¶ 11−15.) In January 2022, venture capital firm K5 Global ("K5") offered Plaintiff a term sheet to lead its seed round of investment for $3 million. (AC ¶ 47; Epstein Decl. ¶ 14.) Singh subsequently started working with K5 in May 2022. (AC ¶¶ 52−53; Epstein Decl. ¶ 16.) Throughout the summer of 2022, K5 expressed interest in making additional investments in Plaintiff. (*E.g.*, AC ¶¶ 56−57; Epstein Decl. ¶¶ 17−19.) As Singh remained an advisor to Plaintiff, he became the liaison between Plaintiff and K5, allegedly orchestrating K5's due diligence of Plaintiff in advance of K5's potential additional investment. (*E.g.*, AC ¶¶ 52−53, 56−57; Epstein Decl. ¶¶ 16, 19−21.)

### Singh Allegedly Obtains Confidential Information from Plaintiff

When Plaintiff's business "took off" in May of 2022, Singh repeatedly asked Epstein for Plaintiff's proprietary information; Singh asserted that K5 required it for its due diligence in order to determine whether it could offer additional funding to Plaintiff at a higher valuation than was previously contemplated. (*E.g.*, AC ¶¶ 56−59, 64, 71−76; Epstein Decl. ¶¶ 17-20, 22, 30−31, 38, 42.) Epstein gave Singh the requested information because Singh was subject to confidentiality obligations to Plaintiff and Epstein believed Singh was acting as K5's representative. (*E.g.*, AC ¶¶ 52−53, 56−57; Epstein Decl. ¶¶ 19−21, 38.) Plaintiff claims that Epstein provided this information to Singh while Epstein and Singh were "often" working the same location, including Epstein's apartment in New York City and from the Scarsdale home of Epstein's parents in the late summer and Fall of 2022[1] (Compl. ¶ 52-59.)

Plaintiff alleges that Singh stockpiled Plaintiff's trade secrets for his and Defendant Apoorva Mehta's ("Mehta") later use, rather than for K5's due diligence purposes. (*E.g.*, AC ¶¶

---

[1] At the Hearing, Plaintiff informed the Court that Epstein and his parents are residents of, and maintain their homes in, Scarsdale, New York. (ECF No. 43.)

80, 83, 87−89, 99−100, 104, 107; Epstein Decl. ¶¶ 36−38, 40−47.) Indeed, Plaintiff alleges that

Singh gave its trade secrets to Mehta after Singh acquired them from Epstein. (*E.g.*, AC ¶¶ 80, 84,

87−89, 99−100, 104, 107−108, 142; Epstein Decl. ¶¶ 36−37, 40−47, 51.) These trade secrets

allegedly took two years and several million dollars to develop; they include Plaintiff's client list,

web traffic and advertising data analytics, revenue mix, product mix, churn data, contact

information, lifetime value, product discounts, demographics, sales patterns, customer acquisition

costs, average revenue per unit, and channel-by-channel marketing analyses. (AC ¶¶ 4; 72-73.)

Moreover, only Epstein and Plaintiff's COO, Leonardo, had full access to this information. (*Id.* ¶

76.)

Conversely, Singh argues that he only visited Epstein's Manhattan apartment for three days

during August of 2022, and that he otherwise saw Plaintiff in person while on vacation at Epstein's

parent's Hamptons home. (Def. Mem., at 3; Singh Dec. ¶ 12.) He further claims that the three days

he spent in Epstein's apartment involved brainstorming for a new business idea unrelated to

Plaintiff. (Def. Mem., at 8-9.) Moreover, Singh alleges that he never pressured Epstein or

Plaintiff's COO Leonardo to divulge any trade secrets and that, even if he acquired trade secrets

by observing Epstein and Leonard work in August of 2022, he used the information he received in

the way he represented he would— to include them in a pitch deck to K5 (*Id.*, at 10.)

### *Defendants Singh and Mehta Start Sunrise in Competition with Plaintiff*

Defendants Singh and Mehta subsequently started Defendant Sunrise, allegedly by using

Plaintiff's trade secrets. (AC ¶¶ 83, 105; Epstein Decl. ¶ 40.) The formal corporate name for

Sunrise, Cloud Health Systems, was incorporated as a Delaware LLC on October 20, 2022, and

Sunrise's website went live in November of 2022. (AC ¶¶ 83, 105; Epstein Decl. ¶ 40.) At present,

Sunrise allegedly engages in the same business as Plaintiff, targets the same customers and

investment opportunities as Plaintiff, and copies Plaintiff's website and advertisements. (*E.g.*, AC ¶¶ 7, 87−88, 101, 106−108, 110−116, 142; Epstein Decl. ¶¶ 4, 37−38, 41−51.) Plaintiff, for instance, claims that on Friday, December 16, 2022, Defendant Sunrise launched a paid advertising campaign with ad copy that is copied exactly from Plaintiff's ad copy as well as uses the same strategy as Plaintiff for video advertisements (AC ¶¶ 7; 112.)

Plaintiff further alleges that Singh admitted to his and Mehta's alleged scheme to steal Plaintiff's trade secrets and found a copycat company when, on October 31, 2022, Singh told Epstein and Leonardo via Facetime that he stole Plaintiff's trade secrets at the personal direction of Mehta, as Mehta believed that he "could do it better" than Plaintiff. (AC ¶ 104.) Likewise, the principle of K5, Bryan Baum, told Epstein that Tej admitted to copying Plaintiff's website and providing Mehta the roadmap to Plaintiff. (*Id.* ¶ 103.)

Defendants Mehta and Sunrise allege, however, that many of Plaintiff's purported "trade secrets" are publicly known. (Defs. Mem., at 22.) They allege, for example, that Plaintiff's business model is well known in the weight loss industry and is disclosed in Plaintiff's public filings. (*Id.*) Moreover, Defendants argue that Plaintiff's pricing structure is publicly available on its website, and that its advertising is not protectable because Plaintiff runs public ads that anyone can examine through publicly available analytics tools. (*Id.*)

Defendants Mehta and Sunrise further allege that, even if Plaintiff possessed trade secrets, Defendant Mehta never directed Defendant Singh to steal them. (*Id.*, at 3.) They argue that Defendants Mehta and Singh worked together for less than two weeks, that they did not meet until late September of 2022, and that Singh never disclosed his connections to Plaintiff to Mehta (*Id.*, at 1-2, 17.) Relatedly, Defendants Mehta and Sunrise claim that Defendant Singh was no longer involved with Sunrise as of November 1, 2022. (*Id.*, at 2.)

### *The Effects of Sunrise's Entry into the Market on Plaintiff*

Plaintiff claims that, because of Defendants' theft and unlawful entry into the market, its costs have increased, its customer acquisitions have decreased, and it has already lost at least one major opportunity for new investment. (AC ¶¶ 89−91, 95, 106−110, 114−115; Epstein Decl. ¶ 37, 41−52.) As one example of its increased costs, Plaintiff claims that Sunrise engaged Plaintiff's key vendor, MD Integrations, by paying this vendor three times the amount Plaintiff paid it for the same services; shortly after Sunrise retained MD Integrations, MD Integrations requested from Plaintiff a five-fold increase in its current rate. (AC ¶ 109.) Plaintiff further alleges that, although it anticipated Black Friday weekend to be one of its most successful weekends for customer acquisition, it instead experienced an unexpected decrease. (Pl. Mem., at 8-9.)

Additionally, Sunrise has raised $20 million from Thrive Capital and Josh Kushner, Green Oaks, and Neil Mehta, which Plaintiff argues means that that these funding opportunities are now closed to it. (AC ¶ 108.) Plaintiff further claims that after it filed its complaint to enjoin Defendants' actions, one investor who was seriously considering investing in Plaintiff decided not to do so because Plaintiff was "too easy to copycat." (*Id.* ¶ 109.) Likewise, although K5 intended to hold an additional fundraising round of $30 million, this did not occur. (*Id.*)

Although Defendants Sunrise and Mehta do not dispute that Sunrise has raised $20 million, they allege Plaintiff drastically oversells the impact that Sunrise has had on Plaintiff. Specifically, Defendants Mehta and Sunrise allege that whereas Plaintiff regularly sees over 150,000 monthly visits to its website and has thousands of members, Sunrise only has 18 customers. (Defs. Mem., at 11.) Defendants Mehta and Sunrise allege, too, that Sunrise signed its second customer, and only one customer, on Black Friday, which they argue disproves Plaintiff's allegations that they lost revenue on Black Friday due the entry of Sunrise into the market. (*Id.*)

7

## PROCEDURAL HISTORY

On November 25, 2022, Plaintiff filed its Complaint (ECF No. 1) against Defendants, alleging claims for misappropriation of trade secrets, conversion, fraud, unfair competition, and copyright infringement. Subsequently, on December 20, 2022, Plaintiff submitted to the Court an Order to Show Cause for a Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction (the "Application") (ECF No. 26) and filed an Amended Complaint. (ECF No. 25.) The Court granted Plaintiff's Application that same day and set a Show Cause Hearing for December 22, 2022. (ECF No. 26.) Defendants Mehta and Sunrise, and Defendant Singh, opposed Plaintiff's Application, filing separate Cross Motions to Immediately Dissolve the December 20 Order to Show Cause. (ECF Nos. 27 and 30, respectively.)

On December 22, 2022, the Court held a Show Cause Hearing for Plaintiff's Application. (ECF No 43.) The Court now addresses Plaintiff's Application.

## LEGAL STANDARD

The Court applies the same standard to applications for a preliminary injunction and a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction.").

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's

favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012). "To satisfy the irreparable harm requirement, Plaintiff[ ] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faively*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

## DISCUSSION

Plaintiff argues that it will suffer irreparable harm in the absence of a temporary restraining order and preliminary injunction because Defendants fraudulently induced Plaintiff to provide them with trade secrets that they are currently using to build and operate a copycat business. (Plf. Mem., at 1-4.) Additionally, Plaintiff argues that, due to Defendants' actions, it now faces higher operating costs, difficulty attracting and retaining customers, and diminished fundraising opportunities. (*Id.*, at 3.) Plaintiff thereby advances the following claims in support of its application for a preliminary injunction: (1) misappropriation of trade secrets[2]; (2) conversion; (3)

---

[2] Although Plaintiff also advances a claim for "unfair competition," this claim is duplicative of Plaintiff's fraud and misappropriation of trade secrets claims, as it rests on the same factual predicates as the fraud and misappropriation

fraud (including fraudulent inducement and fraudulent misrepresentation); and (4) copyright infringement. (*Id.*, at 10-23.)

Although Defendants challenge Plaintiff's contentions for each of these claims, they also argue that the Court does not have personal jurisdiction over them. (*See, e.g.*, Defs. Mem., at 10-14; Def. Mem., at 4-13.) Thus, the Court will now address whether it has personal jurisdiction over each Defendant.

## I.     Applicable Legal Standards for Personal Jurisdiction

The Court determines whether personal jurisdiction exists first by applying the long-arm statute of the forum state—here, New York—and then analyzing whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Spin Master Ltd.*, 463 F.Supp. at 362 (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010); and *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)). "Under the New York long-arm statute, a court in New York can exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under CPLR § 301, or specific jurisdiction, under CPLR § 302." *Wallert v. Atlan*, 141 F.Supp.3d 258, 271 (S.D.N.Y. 2015). Defendants argue that Plaintiff cannot exercise personal jurisdiction over them under N.Y. C.P.L.R. § 301 or N.Y. C.P.L.R. § 302, including N.Y. C.P.L.R. § 302(a)(1), N.Y. C.P.L.R. § 302(a)(2), and N.Y. C.P.L.R. § 302(a)(3). (*See, e.g.*, Defs. Mem., at 10-14; Def. Mem., at 4-13.)

Additionally, there is a heightened standard for personal jurisdiction on a request for interlocutory injunctive relief. The plaintiff must demonstrate a reasonable probability of ultimate

---

claims. *Ferring B.V. v. Allergan, Inc*., 4 F.Supp.3d 612, 629 (S.D.N.Y. 2014). Indeed, Plaintiff only states, "For the same reasons that NextMed is likely to prevail on its trade-secrets claims and fraud claims, it is likely to prevail on its unfair competition claim." (Plf. Mem., at 22.)

success on this issue. *See Alibaba Grp. Holding Ltd. v. Alibabacoin Found*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *2; *see also Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990).

### a.   General Jurisdiction: N.Y. C.P.L.R. § 301

Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if she is domiciled in New York, served with process in New York, or continuously and systematically does business in New York. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990); *Pichardo v. Zayas*, 122 A.D.3d 699, 702, 996 N.Y.S.2d 176, 180 (2d Dept. 2014); *see also Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004). General jurisdiction permits a court to adjudicate any cause of action against a defendant that meets these criteria, "wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

### b.   Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(1) (Business Activities)

N.Y.C.P.L.R. § 302(a)(1) ("§ 302(a)(1)") provides that personal jurisdiction exists over a non-domiciliary defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state." Plaintiffs must meet two requirements to establish personal jurisdiction under § 302(a)(1): "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). A defendant "transact[s] business" in the state if it has engaged in "purposeful activity" by "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)). Where, as here, a defendant is alleged to have

"transacted business" through a website, courts apply a "sliding scale" test to determine whether operation of a website accessible in New York constitutes purposeful availment. *Spin Master Ltd. v. 158,* 463 F.Supp.3d 348, 362 (S.D.N.Y. 2020). The more "interactive" the website in soliciting information from potential buyers in New York, the more likely a court is to find purposeful availment. *See Chloe*, 616 F.3d at 170; *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, No. 02 Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003). It is insufficient to allege that a defendant conducts business through an interactive third-party website; the defendant must use the website to reach into the forum state in some meaningful way. *See Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 Civ. 1089, 2004 WL 1824102, at *8–9 (S.D.N.Y. Aug. 13, 2004). It is also insufficient to allege that a defendant merely offers a product outside New York for sale in New York if no sale takes place in New York or to a New York resident, even if the defendant operates a commercial website capable of reaching customers in New York. *Spin Master Ltd.*, 463 F. Supp. 3d at 364–65; *Alibaba Grp. Holding*, 2018 WL 2022626, at *4; *Savage Universal Corp.*, 2004 WL 1824102, at *9.

### c. *Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(2) (Tortuous Conduct Within New York)*

N.Y.C.P.L.R. § 302(a)(2) ("§ 302(a)(2)") provides that personal jurisdiction may apply where a defendant commits tortuous conduct while physically present in New York. Prior to its amendment in 1966, the New York long-arm statute was consistently read to "cover[ ] only a tortious act committed (by a nondomiciliary) in this State." *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 464, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Since then, a small number of lower state courts have, on narrow grounds, expanded the rule to recognize that "not all tortious acts that occur within the State of New York need be committed while the

defendant is physically present within New York boundaries for purposes of CPLR § 302(a)(2)." *Davidoff v. Davidoff*, 12 Misc.3d 1162(A), 819 N.Y.S.2d 209, at \*8 (Sup.Ct.2006).

However, the Second Circuit continues to adhere to the traditional, stricter rule. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir.1999) (reaffirming that a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)"). The endurance of the rule is further reflected by the majority of district court opinions on the subject. *See, e.g.*, *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 418 (S.D.N.Y.2010) (quoting *Bank Brussels Lambert*, 171 F.3d at 789–9) ("New York courts and the Second Circuit have consistently interpreted § 302(a)(2) jurisdiction narrowly and have held that to qualify for jurisdiction under this subsection, a defendant's act or omission [must have] occur[red] within the State.") (collecting cases); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 03–cv–1681 (LAP), 2004 WL 2199547, at \*12 (S.D.N.Y. Sept. 29, 2004) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997)) ("The Second Circuit has interpreted § 302(a)(2) to require that the tortious act itself physically be performed within New York State.") (internal marks and quotations omitted); *Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, 11–cv–5875 (SJF)(ETB), 2013 WL 80181, at \*9 (E.D.N.Y. Jan. 2, 2013) ("Section 302(a)(2) confers personal jurisdiction over a non-domiciliary defendant only when they commit acts within the state."); *Roth v. El Al Israel Airlines, Ltd.*, 709 F.Supp. 487, 490 (S.D.N.Y.1989) ("Section 302(a)(2) requires that the tort be committed in New York and defendant must actually be in New York when the tort is committed").

Given Second Circuit precedent, the Court must apply the majority rule requiring the defendant to physically commit the tortious act within New York. *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803–04 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016); *see also Bank*

*Brussels Lambert*, 171 F.3d at 790; *accord Stein v. Annenberg Research Inst.*, 90–cv5224 (LLS), 1991 WL 143400, at *3 (S.D.N.Y. July 19, 1991) (citing *Fox v. Boucher*, 794 F.2d 34 (2d Cir.1986)) (observing that "[i]n contrast to the conflicting authority in the state courts, the federal cases construing § 302(a)(2) ... have uniformly held that jurisdiction under the section cannot be predicated on telephone calls made or letters mailed into this State").

Additionally, jurisdiction under Section 302(a)(2) may extend to out-of-state individuals who did not themselves commit a tort in New York, but "who can be deemed responsible for such a tort based upon theories of agency or conspiracy." *LaChapelle* v. *Torres*, 1 F.Supp.3d 163, 169 (S.D.N.Y. 2014); *see also Emerald Asset Advisors, LLC* v. *Schaffer*, 895 F.Supp.2d 418, 430 (E.D.N.Y. 2012) ("[P]ersonal jurisdiction under Section 302(a)(2) may also be predicated on acts taken by an agent."). "Whether a defendant's representative is an 'agent' for purposes of [Section] 302(a) hinges on whether the representative acted '[i] for the benefit of and [ii] with the knowledge and consent of [the] defendant and [iii] [the defendant] exercised some control over [the agent] in the matter.'" *LaChapelle*, 1 F.Supp.3d at 169 (quoting *Emerald Asset Advisors, LLC*, 895 F.Supp.2d at 430); *see also CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (explaining that an "agent" for purposes of C.P.L.R. Section 302(a) is a person who has "acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal" (citations omitted)). "While the principal need not exercise absolute control over the decisions or acts of the putative agent, ... a sufficient amount of control 'may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles.'" *Maersk, Inc.* v. *Neewra*, *Inc.*, 554 F.Supp.2d 424, 442 (S.D.N.Y. 2008) (internal citation omitted) (quoting *Scholastic, Inc.* v. *Stouffer*, No. 99 Civ. 11480 (AGS), 2000 WL 1154252, at *5 (S.D.N.Y. Aug. 14, 2000)).

#### d.   *Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(3) (Tortuous Conduct Outside New York)*

N.Y. C.P.L.R. § 302(a)(3) ("§ 302(a)(3)") provides that personal jurisdiction exists over a non-domiciliary defendant that "commits a tortious act without the state causing injury to person or property within the state ... if [she] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Spin Master Ltd.*, 463 F. Supp. 3d at 365 (quoting *Penguin Grp.*, 16 N.Y.3d at 302).

Plaintiff's injury is deemed to take "place where its business is lost or threatened." *Id.* (quoting *Penguin Grp.*, 16 N.Y.3d at 305). Thus, Plaintiff must plead lost sales or lost consumers in New York. *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997)). Plaintiff must also plead that Defendants made sales to New York or otherwise targeted New York such that they "purposefully availed [themselves] of the benefits of the laws of New York, to the extent that [t]he[y] would reasonably anticipate being hailed into a New York court." *Id.* at 468. However, foreseeability of harm is insufficient; it "must be coupled with

evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Id*. (citation omitted).

## II.    Analysis

As an initial matter, Plaintiff has not met its "burden to establish a *prima facia* case of personal jurisdiction against each Defendant as to each claim asserted" on the pleadings alone. (describing, "Plaintiffs' burden to establish a prima facie case of personal jurisdiction against each Defendant as to each claim asserted"; *see HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) ("In relying only on group pleadings, in which it conflates multiple parties and fails to provide specific allegations, Plaintiff neglects its burden of establishing personal jurisdiction over each defendant."); *Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 397 (S.D.N.Y. 2021) ("Allegations in the form of a group pleading are insufficient....").

Plaintiff's only allegation that directly concerns personal jurisdiction is in paragraph 22 of its Complaint, which states, "[t]his Court has personal jurisdiction over Defendants because, as set forth herein, Defendants transact business in this District, have misappropriated NextMed's property in this District, and have caused tortious injury to NextMed in this District." (AC ¶ 22.) Yet, as discussed *infra*, even if the Court considers Plaintiff's brief assertion of personal jurisdiction to incorporate the allegations made throughout its pleadings, as well as its allegations offered at the Hearing, Plaintiff has failed to meet the heightened burden for personal jurisdiction that it faces on a request for interlocutory injunctive relief— namely, a reasonable probability of ultimate success on this issue. *See Alibaba Grp. Holding Ltd. v. Alibabacoin Found*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *2; *see also Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990).

16

### a. *General Jurisdiction Pursuant to N.Y. C.P.L.R. § 301 and Specific Jurisdiction Pursuant to N.Y. C.P.L.R. § 302(a)(1)*

First, the Court does not have general personal jurisdiction over any Defendant. Plaintiff has not alleged that Sunrise, Mehta, or Singh is domiciled in New York, was served with process in New York, or continuously and systematically does business in New York. *See Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004). Therefore, the Court must determine whether specific personal jurisdiction exists as to any Defendant.

Specific personal jurisdiction may apply if the criteria of § 302(a)(1), § 302(a)(2), or § 302(a)(3) are met. For § 302(a)(1) to apply, Plaintiff must allege more than that a defendant offers a product outside New York for sale in New York, if no sale has taken place in New York (or to a New York resident), even if the defendant operates a commercial website capable of reaching customers in New York. *Spin Master Ltd.*, 463 F. Supp. 3d at 364–65; *Alibaba Grp. Holding*, 2018 WL 2022626, at *4; *Savage Universal Corp.*, 2004 WL 1824102, at *9. Yet, that is exactly what Plaintiff alleges here. Although Plaintiff claims that Sunrise competes with NextMed for customers, that Defendant Mehta is the principle of Sunrise, and Defendant Singh helped to found Sunrise, there are no allegations that any Defendant has made any sale in New York or to a New York resident. (*See e.g.*, AC ¶¶ 4-6, 105-115.) Therefore, specific jurisdiction does not apply to any Defendant under § 302(a)(1).

### b. *Specific Jurisdiction Pursuant to N.Y. C.P.L.R. § 302(a)(2)*

§ 302(a)(2) permits courts to exercise "personal jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act within the state...." Plaintiff does not allege that either Defendant Mehta or Defendant Sunrise committed the alleged tortuous conduct

while physically present in New York. However, Plaintiff does allege that Singh committed various torts in New York against it, and that Singh did so at Mehta's direction so that Singh and Mehta could found Sunrise. (Plf. Mem., at 10-24.)  It is possible, therefore, that Mehta and Sunrise are subject to personal jurisdiction if the Court finds Singh subject to personal jurisdiction under § 302(a)(2), on the basis that Mehta and Sunrise committed the torts as co-conspirators of Singh. *See Chrysler Cap. Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (concluding, "[c]ourts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators."); *see also New Media Holding Co. LLC v. Kagalovsky*, 97 A.D.3d 463, 464-465 (1st Dep't 2012). (noting, "[t]o establish personal jurisdiction through a co-conspirator's in-state actions, the plaintiff must (1) ... make a prima facie factual showing of a conspiracy; ... (2) ... allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act in New York") (internal quotations omitted).

To assert personal jurisdiction under § 302(a)(2) Plaintiff must allege that each element of the torts on which such jurisdiction is based occurred in New York. *Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, No. 17 CIV. 241 (ER), 2018 WL 1605985, at *13 (S.D.N.Y. Mar. 29, 2018); *see Saudi Computer Aided Translation Ltd. v. Weidner Commc'ns Corp.*, 663 F. Supp. 1104, 1107 (S.D.N.Y. 1987) (rejecting plaintiff's assertion of personal jurisdiction under Section 302(a)(2) because plaintiff did not allege that each element of the tort occurred in New York.). As discussed below, however, Plaintiff has failed to establish this burden with respect to any of the torts alleged.

### 1.  Misappropriation of Trade Secrets

The main argument on which Plaintiff's Application rests is that Defendants misappropriated Plaintiff's trade secrets. The requirements for showing a misappropriation of a

trade secret are similar under state and federal law. Under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). Similarly, under the Defend Trade Secrets Act ("DTSA"), a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (quoting 18 U.S.C. § 1839(3) (A)–(B)).

Plaintiff claims that Defendant Singh stole Plaintiff's trade secrets from Epstein while Epstein and Singh were "often" working the same location, including from Epstein's apartment in New York City and the Scarsdale home of Epstein's parents in the late Summer and Fall of 2022[3] (Compl. ¶¶ 52-59.) Conversely, Singh argues that he only visited Epstein's Manhattan apartment for three days during August of 2022, and that he otherwise saw Plaintiff in person while on vacation at the Hamptons home of Epstein's parents. (Def. Mem., at 3; Singh Dec. ¶ 12.) Singh further claims that the three days he spent in Epstein's apartment involved brainstorming for a new business idea unrelated to Plaintiff. (Def. Mem., at 8-9.)

Even assuming, *arguendo*, that Singh stole Plaintiff's trade secrets in the manner Plaintiff describes, Plaintiff fails to allege that Singh (or any Defendant) disclosed or used these secrets in New York. Although Plaintiff alleges that Singh gave the trade secrets to, and subsequently used

---

[3] At the Hearing, Plaintiff informed the Court that Epstein and his parents are both residents of Scarsdale, New York.

them to start Sunrise with, Mehta, it does not allege that the discloser or use of this information occurred in New York. Indeed, to the extent Plaintiff's allegations establish that Defendants disclosed or used its trade secrets in any location, that location is San Francisco, where Mehta and Singh allegedly worked together to found Sunrise. (AC ¶¶ 97-100.) Therefore, Plaintiff has not alleged that each element of its claim for misappropriation of trade secrets occurred in New York. *See* Restatement (First) of Torts § 757 (1939) (liability for unprivileged use or disclosure of trade secrets); *cf. Sterling Television Presentations v. Shintron Co.*, 454 F.Supp. 183 (S.D.N.Y.1978) (no jurisdiction under § 302(a)(1) for misappropriation of trade secret where unauthorized use occurred in Massachusetts); *see also Darby Drug Co. v. Zlotnick*, 573 F. Supp. 661, 663–64 (E.D.N.Y. 1983), *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 365 (S.D.N.Y. 2012).

### 2. Conversion

Second, Plaintiff alleges that Defendants are liable for conversion. The Second Circuit set forth the standards applicable to a claim for conversion under New York law in *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006):

> According to New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) (internal quotation marks omitted). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. *Sporn [v. MCA Records, Inc.]*, 58 N.Y.2d [482] at 487, 462 N.Y.S.2d 413, 448 N.E.2d 1324 [(1983)]. It also requires that the defendant exclude the owner from exercising her rights over the goods. *New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d

702 (2002). *See also Cruz v. TD Bank, N.A.*, 855 F.Supp.2d 157, 174 (S.D.N.Y.2012) (Castel, D.J.); *Goodman v. Port Auth. of New York and New Jersey*, 850 F.Supp.2d 363, 376–77 (S.D.N.Y.2012) (Sweet, D.J.); *Soroof Trading Dev. Co., Ltd. v. GE Fuel Sys., LLC*, 842 F.Supp.2d 502, 513–14 (S.D.N.Y.2012) (Swain, D.J.).

As established *supra*, Plaintiff does not allege that any Defendant used its property (i.e., its trade secrets or other intellectual property) in New York or created or operated Sunrise in New York— Plaintiff only offers the vague allegation that Defendants' alleged theft and use of Plaintiff's information interferes with its rights of ownership. (Plf. Mem., at 19.) This indicates that Defendants did not exclude Plaintiff from exercising its rights over its property in New York. Therefore, Plaintiff cannot establish personal jurisdiction under § 302(a)(2) through its sparsely pled claim for conversion.

### 3. Fraud

Third, Plaintiff advances various fraud claims, including fraudulent inducement and fraudulent concealment. (Plf. Mem, at 9.) The elements for these claims are generally the same— a plaintiff must allege that the defendant "made a misrepresentation or an omission of material facts, which was false and known to be false by the defendant when made, for the purpose of inducing the plaintiff's reliance, and the plaintiff justifiably relied on the misrepresentation, thus suffering damages." *MDK Hijos Tr. v. Nordlicht*, 2020 NY Slip Op 30793(U), ¶ 13 (Sup. Ct. N.Y. Cty. 2020). A plaintiff must also allege that "the defendant made a material misrepresentation of fact; that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; that the plaintiff reasonably relied on the misrepresentation; and that the plaintiff suffered damage

as a result of its reliance on the defendant's misrepresentation." *See P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (1st Dep't 2003).

Plaintiff's assertion of personal jurisdiction on its fraud claims fails because Plaintiff has not alleged that it was injured in New York. Although Plaintiff claims that, because of Defendants' entry into the market, its costs have increased, its customer acquisitions have decreased, and it has already lost at least one major opportunity for new investment (AC ¶¶ 89−91, 95, 106−110, 114−115; Epstein Decl. ¶ 37, 41−52), these allegations are entirely vague concerning the location of the harms (for instance, Plaintiff has not alleged that it lost customers in New York or provided any direct evidence tying its alleged reduction in customer acquisitions to Plaintiff's entry into the market). The Court cannot, therefore, exercise personal jurisdiction pursuant to § 302(a)(2) over Defendants based on Plaintiff's loosely pled fraud claims.

### 4.  Copyright Infringement

Lastly, Plaintiff argues that Defendants are liable for copyright infringement because they copied Plaintiff's website. (Plf. Mem., at 22-23.) In a claim for copyright infringement, "Rule 8 requires that the particular infringing acts be set out with some specificity." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n. 3 (S.D.N.Y.1992), aff'd, 23 F.3d 398 (2d Cir.1994), cert. denied, 513 U.S. 950, 115 S.Ct. 365, 130 L.Ed.2d 318 (1994) (internal citations omitted). Courts in this District apply the *Kelly* court's four-prong test to determine whether a claim of copyright infringement satisfies the requirements of Rule 8. *See, e.g., Jacobs v. Carnival Corp.*, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009). A plaintiff must allege: "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the

copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." *Id.* (citations omitted).

Here, Plaintiff has not alleged that the copying—the creation of the Sunrise website—occurred in New York. As noted *supra*, Mehta and Sunrise allegedly worked together to found Sunrise (and its website) in San Francisco. (AC ¶¶ 97-100.) Plaintiff cannot, then, establish that personal jurisdiction exists pursuant to § 302(a)(2) over Defendants based on its sparsely pled claim for copyright infringement claim, which does not even allege that Plaintiff owns a valid copyright over any part of its website.

### c.  Specific Jurisdiction Pursuant to N.Y. C.P.L.R. § 302(a)(3)

For the Court to exercise personal jurisdiction under § 302(a)(3) as to each of the Defendants here (all of which are non-domiciliary), Plaintiff must satisfy the following five criteria as to each Defendant: (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Spin Master Ltd.*, 463 F.Supp.3d at 365 (quoting *Penguin Grp.*, 16 N.Y.3d at 302). Regarding criterion (3), Plaintiff must plead lost sales or lost consumers in New York. *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.Supp.2d 458, 467 (S.D.N.Y. 2008) (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F.Supp. 494, 497 (S.D.N.Y. 1997)). Additionally, regarding criterion (4), Plaintiff must plead that Defendants made sales to New York or otherwise targeted New York such that they "purposefully availed [themselves] of the benefits of the laws of New York, to the extent that [t]he[y] would reasonably anticipate being hailed into a New York court." *Id*. at 468. However, foreseeability of harm is insufficient; it "must be coupled

23

with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Id.* (citation omitted).

The Court has already determined *supra* that Plaintiff has not pled lost sales or lost consumers in New York. Moreover, Plaintiff has not sufficiently pled that any Defendant derived substantial revenue from interstate or international commerce. For instance, Plaintiff does not allege that Defendants Mehta or Singh themselves have derived any revenue from the alleged tortuous conduct (i.e., stealing Plaintiff's trade secrets) in their individual capacities. And despite Plaintiff's allegation that Sunrise "offers exactly the same services and business model as NextMed, and the Sunrise site is live and competing with NextMed for funding, customers, and advertising," Plaintiff has not alleged that Sunrise has a single customer.[4] (Compl. ¶ 7.) *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F.Supp.3d 401, 415 (S.D.N.Y. 2022) (noting that Plaintiff did not sufficiently allege personal jurisdiction for purposes of § 302(a)(3)(ii) where the Complaint failed to allege any factual allegations of substantial revenue from interstate or internal commerce).

Thus, Plaintiff has likewise not sufficiently pled that any Defendant made sales to New York or otherwise targeted New York, such that any Defendant expected or should reasonably have expected the alleged tortuous acts (i.e., misappropriating Plaintiff's trade secrets and infringing on Plaintiff's copyrights) to have consequences in New York. "Even the existence of an interactive 'patently commercial' website [such as the one at issue] that can be accessed by New

---

[4] Defendants represent that Sunrise only has 18 customers, but do not specify the location of the customers. (Defs. Mem., at 11.)  Further, although Plaintiff alleges that Defendant obtained $20 million in funding from venture capital firms, such funding is not "revenue." Plaintiff does not characterize the venture capital funding it alleges Sunrise received as revenue, and it is generally known that such funding is given to early-stage companies in exchange for equity or other rights in the company (which suggests that such funding is not "revenue" as it is generally known or typically defined).  *See* https://www.investopedia.com/ask/answers/122214/what-difference-between-revenue-and-income.asp (defining revenue as "the total amount of income generated by the sale of goods or services related to the company's primary operations").

York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." *Alibaba Grp. Holding Ltd. v. Alibabacoin Found*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (internal citation omitted); *see also Buccellati Holding Italia SPA v. Laura Buccellati*, LLC, 935 F.Supp.2d 615, 622 n.3 (S.D.N.Y. 2013).

The Court cannot exercise personal jurisdiction over any Defendant under § 302(a)(3), as Plaintiff has not sufficiently alleged that any Defendant either expected or should have reasonably expected the alleged tortuous acts to have consequences in New York or derived substantial revenue from interstate or international commerce. Therefore, in light Plaintiff's failure to allege facts sufficient to support a finding of either general or specific personal jurisdiction over any Defendant, it has not met the heightened standard for personal jurisdiction on a request for interlocutory injunctive relief— a reasonable probability of ultimate success on this issue. *See Alibaba Grp. Holding Ltd.*, 2018 WL 2022626, at *2; *see also Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990).[5]

## CONCLUSION

For the foregoing reasons, Plaintiff's Application is denied, without prejudice to renew upon an adequate showing of personal jurisdiction, and Defendants' Motions to Dissolve the December 20 Order to Show Cause (ECF Nos. 27 and 30) are GRANTED. Plaintiff is granted leave to file amended pleadings within fifteen (15) days, on or before January 18, 2023. Accordingly, the temporary restraining order and authorization of expedited discovery by Plaintiff

---

[5] Given that the Court has not found that personal jurisdiction exists under either general or specific jurisdiction, it is unnecessary for the Court to determine whether the exercise of jurisdiction would comport with Due Process Requirements. *See e.g., id.*, at *8.

ordered by the Court's December 20 Order to Show Cause (ECF No. 26) are deemed immediately

dissolved. The Clerk of the Court is directed to terminate the motions at ECF Nos. 27 and 30.

Dated:    January 3, 2023                               SO ORDERED:
          White Plains, New York

 

_____

     NELSON S. ROMÁN
United States District Judge