USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HELIO LOGISTICS, INC. d/b/a NEXTMED,

                Plaintiff,

   -against-

APOORVA MEHTA, CLOUD HEALTH SYSTEMS LLC d/b/a SUNRISE HEALTH, and TEJASVI SINGH

                Defendants.

No. 22-cv-10047 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Before the Court is Plaintiff Helio Logistics, Inc. d/b/a NextMed's ("Plaintiff" or "NextMed") application for a Renewed Order to Show Cause for a Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction (the "Renewed Application") (ECF Nos. 58-61), which Plaintiff submitted to the Court on January 27, 2023. Plaintiff requests that the Court temporarily restrain the defendants in this action from using or disclosing Plaintiff's trade secrets as well as seeks limited, expedited discovery of the defendants. For the reasons set forth herein, Plaintiff's Renewed Application is GRANTED.

## BACKGROUND

On December 20, 2022, Plaintiff submitted to the Court an Order to Show Cause for a Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction (the "Initial Application"). (ECF No. 26.) The Court granted Plaintiff's Initial Application that same day and set a Show Cause Hearing for December 22, 2022 (the "Initial Hearing"). (ECF No. 26.). Defendants Apoorva Mehta ("Mehta" or "Defendant"), Cloud Health Systems LLC d/b/a Sunrise Health ("Sunrise" or "Defendant"), and Tejasvi Singh ("Singh" or "Defendant") (collectively,

1

"Defendants") each opposed Plaintiff's Initial Application, filing separate Cross Motions to Immediately Dissolve the December 20 Order to Show Cause. (ECF Nos. 27 and 30, respectively). Following the Initial Hearing, in an opinion and order dated January 3, 2023 (the "Opinion") (ECF No. 43), the Court dissolved Plaintiff's Initial Application for failure to demonstrate a likelihood of success on its claim that the Court has personal jurisdiction over all Defendants, without prejudice to renew upon an adequate showing of personal jurisdiction.

Plaintiff subsequently filed a Verified Second Amended Complaint (the "Complaint") on January 18, 2023 (ECF No. 49.). On January 27, 2023, Plaintiff then submitted to the Court the Renewed Application. The Court held a hearing via teleconference on February 1, 2023 (the "Hearing"). Defendants Mehta and Sunrise, and Defendant Singh, each opposed Plaintiff's Renewed Application, arguing that Plaintiff again failed to demonstrate a likelihood of success for its claim that the Court possesses personal jurisdiction over all Defendants, and that Plaintiff did not show irreparable harm or a likelihood of success on its central claim that Defendants misappropriated its trade secrets. (*See* ECF Nos 62-66.)

Specifically, Plaintiff's Renewed Application seeks to temporarily restrain Defendants and anyone acting in concert with them, from:

    (1) Using, disclosing, selling, copying, duplicating, or otherwise employing Plaintiff's trade secrets (i.e., Plaintiff's business strategies, client list, web traffic data, advertising data analytics, revenue and products mix, sales patterns, churn data, customer emails and customer demographic information, customer lifetime values, and information related to Plaintiff's intake flow, pricing structure, average revenue per unit data, insurance authorization process, vendor relations, and Plaintiff's customer acquisition costs and channel-by-channel marketing analysis), including through using or

"Defendants") each opposed Plaintiff's Initial Application, filing separate Cross Motions to Immediately Dissolve the December 20 Order to Show Cause. (ECF Nos. 27 and 30, respectively). Following the Initial Hearing, in an opinion and order dated January 3, 2023 (the "Opinion") (ECF No. 43), the Court dissolved Plaintiff's Initial Application for failure to demonstrate a likelihood of success on its claim that the Court has personal jurisdiction over all Defendants, without prejudice to renew upon an adequate showing of personal jurisdiction.

Plaintiff subsequently filed a Verified Second Amended Complaint (the "Complaint") on January 18, 2023 (ECF No. 49.). On January 27, 2023, Plaintiff then submitted to the Court the Renewed Application. The Court held a hearing via teleconference on February 1, 2023 (the "Hearing"). Defendants Mehta and Sunrise, and Defendant Singh, each opposed Plaintiff's Renewed Application, arguing that Plaintiff again failed to demonstrate a likelihood of success for its claim that the Court possesses personal jurisdiction over all Defendants, and that Plaintiff did not show irreparable harm or a likelihood of success on its central claim that Defendants misappropriated its trade secrets. (*See* ECF Nos 62-66.)

Specifically, Plaintiff's Renewed Application seeks to temporarily restrain Defendants and anyone acting in concert with them, from:

(1) Using, disclosing, selling, copying, duplicating, or otherwise employing Plaintiff's trade secrets (i.e., Plaintiff's business strategies, client list, web traffic data, advertising data analytics, revenue and products mix, sales patterns, churn data, customer emails and customer demographic information, customer lifetime values, and information related to Plaintiff's intake flow, pricing structure, average revenue per unit data, insurance authorization process, vendor relations, and Plaintiff's customer acquisition costs and channel-by-channel marketing analysis), including through using or

employing any documents, files, platforms, websites, systems, or other information that is derived from Plaintiff's trade secrets; and

(2) Defendants, and anyone acting in concert with Defendants, are enjoined from erasing, replacing, destroying, transferring, moving, or otherwise disposing of Plaintiff's trade secrets (i.e., Plaintiff's business strategies, client list, web traffic data, advertising data analytics, revenue and products mix, sales patterns, churn data, customer emails and customer demographic information, customer lifetime values, and information related to Plaintiff's intake flow, pricing structure, average revenue per unit data, insurance authorization process, vendor relations, and Plaintiff's customer acquisition costs and channel-by-channel marketing analysis) from their present location, absent further order of this Court.

The Renewed Application also requests limited, expedited discovery, including (3) depositions and up to ten (10) requests for the production of documents on Defendants.

Following expedited discovery, Plaintiff further seeks a preliminary injunction restraining Defendants from (1) and (2), *supra*, in addition to restraining Defendants from:

(1) making available or otherwise providing their websites, currently at https://www.findsunrise.com/ and https://app.findsunrise.com/, or any variations thereof, to the public, including to former, current, and prospective customers and investors, absent further order of this Court.

The Court has carefully reviewed the parties' submissions and considered the arguments that each party made at the Hearing. For the following reasons, the Court finds that Plaintiff has demonstrated a likelihood of success on its claim that the Court has personal jurisdiction over all Defendants. Accordingly, and in light of Plaintiff's showing of irreparable harm and a likelihood

of success on its claim for misappropriation of trade secrets as against all Defendants, the Court GRANTS Plaintiff's Renewed Application, as set forth in the Conclusion, *infra*.

## **LEGAL STANDARD**

The Court applies the same standard to applications for a preliminary injunction and a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction."). Additionally, in deciding a motion for [a] preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence. *Park Irmat Drug Corp. v. OptumRx, Inc.* 152 F.Supp.3d 127, 132 (S.D.N.Y. 2016); *see also 725 Eatery Corp. v. City of New York*, 408 F.Supp.3d 424, 455 (S.D.N.Y. 2019) (quoting *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d

Cir. 2009); *see Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012). "To satisfy the irreparable harm requirement, Plaintiff[ ] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faively*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

## **DISCUSSION**

### I. Plaintiff has Demonstrated a Likelihood of Success on its Claim that the Court has Personal Jurisdiction Over All Defendants

As the Court noted in its Opinion, it may exercise personal jurisdiction over a given defendant if it possesses either general or specific personal jurisdiction over that defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)). General personal jurisdiction may apply if the criteria of N.Y. C.P.L.R. § 301 ("§ 301") are met. Additionally, specific personal jurisdiction may apply if the criteria of N.Y.C.P.L.R. § 302(a)(1) ("§ 302(a)(1)"), N.Y.C.P.L.R. § 302(a)(2) ("§ 302(a)(2)"), or N.Y.C.P.L.R. § 302(a)(3) ("§ 302(a)(3)") are met.

#### A. Defendant Sunrise

In its Opinion, the Court concluded that Plaintiff did not show a likelihood of success on its claim that the Court has personal jurisdiction over Defendant Sunrise primarily because Plaintiff failed to allege that Sunrise had at least one customer in New York. *See Spin Master Ltd.*, 463

5

F.Supp.3d at 364–65; *Alibaba Grp. Holding*, 2018 WL 2022626, at *4; *Savage Universal Corp.*, 2004 WL 1824102, at *9; (*see also* Opinion, at 17.)

In its Second Verified Amended Complaint ("SAC"), however, Plaintiff alleges that Defendant Sunrise represented on its website in November of 2022 that it had at least one customer in New York. For instance, Plaintiff notes that Sunrise's website highlighted several of its "Real members" with "Real stories" and "Real results," one of whom was "Sonia T from New York City." (SAC ¶ 30.) As Plaintiff has alleged that Sunrise has at least one customer in New York and that Sunrise intentionally targets New York customers through its highly interactive website, the Court finds that it has shown a likelihood of success on its claim that the Court has personal jurisdiction over Defendant Sunrise pursuant to § 302(a)(1). (SAC ¶ 3); *see Fahey v. Breakthrough Films & Television Inc.*, No. 21 CIV 3208 PAESLC, 2022 WL 4547438, at *6 (S.D.N.Y. Sept. 29, 2022) (noting that a single transaction in New York may be sufficient for the court to exercise personal jurisdiction over a defendant where the defendant's activities were purposeful and a substantial relationship existed between the transaction and the claim asserted); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir.1997) (alteration in original) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) (internal quotation marks omitted)).[1]

### B. Defendants Mehta and Singh

The Court likewise concluded in its Opinion that Plaintiff failed to demonstrate a likelihood of success on its claim that the Court has personal jurisdiction over Defendants Mehta and Singh.

---

[1] The Court also finds that the exercise of personal jurisdiction over Defendant Sunrise comports with Due Process requirements. Defendant Sunrise purposefully established 'minimum contacts' in New York by purposefully availing itself of this forum when it intentionally acquired a New York customer. *See John Wiley & Sons, Inc. v. Swancoat*, 2009 WL 2486048, at *2 (S.D.N.Y. Aug. 14, 2009; *Fahey v. Breakthrough Films & Television Inc.*, No. 21 CIV 3208 PAESLC, 2022 WL 4547438, at *6 (S.D.N.Y. Sept. 29, 2022).

However, Plaintiff now offers allegations that Defendants Mehta and Singh both worked to obtain (and ultimately did obtain) funding for Sunrise from Thrive Capital, a venture capital firm based in New York, and that in order to solicit this funding both Defendants likely divulged in communications with Thrive Capital the trade secrets they purportedly misappropriated from Plaintiff. (*See, e.g.*, SAC ¶¶ 9-11, 25, 37, 129-33, 138.) Plaintiff further claims that Mehta continues to engage "frequent and sustained communications" with Thrive Capital in connection with the firm's investment in Sunrise. (*Id.* ¶ 3.) This Court has previously found that such fundraising activities constitute "business transactions" and are thereby sufficient to satisfy § 302(a)(1). *See Porco v. Phoenix Bldg. Corp.*, No. 18 CV 5938 (NSR), 2019 WL 2210659, at *4 (S.D.N.Y. May 21, 2019) (noting that fundraising activities undertaken by a defendant outside of New York with a third-party in New York constituted business transactions and were sufficient to satisfy § 302(a)(1) where the plaintiff's claims partly arose out of those transactions); *see also Suber v. VVP Servs.*, LLC, No. 21-2649, 2023 WL 115631, at *3 (2d Cir. Jan. 10, 2023) (finding that "fundraising activities in New York amounted to a business transaction" for purposes of § 302(a)(1)); *Pearson Educ., Inc. v. Kumar*, 721 F.Supp.2d 166, 184 (S.D.N.Y. 2010) (finding that personal jurisdiction existed as to the defendant pursuant to § 302(a)(1) where the defendant purposefully availed himself of the "privilege[] of ... conducting sales to residents of New York").[2]

## II. Plaintiff has Shown Irreparable Harm From, and a Likelihood of Success on the Merits of, its Claim for Misappropriation of Trade Secrets as Against All Defendants

---

[2] The Court further finds that the exercise of personal jurisdiction over Defendants Mehta and Singh comports with Due Process requirements. As noted *supra*, both Defendants purposefully solicited investment from New York persons for their own financial gain. *Porco v. Phoenix Bldg. Corp.*, No. 18 CV 5938 (NSR), 2019 WL 2210659, at *5 (S.D.N.Y. May 21, 2019); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). Moreover, it would not be unjust to require Defendants to litigate in the same forum from which they purposefully sought to profit. *Id.*

Plaintiff has shown for purposes of its request for a temporary restraining order that it will suffer irreparable harm in the absence of a temporary restraining order from Defendants' alleged misappropriation of its trade secrets. "Irreparable harm is presumed where a trade secret has been misappropriated." *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006).

Here, Plaintiff alleges that Defendants have already misappropriated and used its trade secrets to start a competing business. Plaintiff specifically alleges that Defendant Singh misappropriated its trade secrets while working with its CEO, Robert Epstein, and that he disclosed them to Defendant Mehta, who purportedly used them to start, and obtain venture capital funding for, a competing business (i.e., Sunrise). (SAC ¶¶ 5, 19, 23, 71, 73−74, 119-128.) Moreover, although Defendants argue that the types of information Plaintiff alleges were misappropriated are not trade secrets (e.g., business strategies, client lists, advertising data analytics, pricing structure, and vendor relations), courts in this district routinely find that such types of information are considered trade secrets. *See e.g*, *In re Dana Corp*., 574 F.3d 129, 152 (2d Cir. 2009) ("Confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law"); *Kraus USA, Inc. v. Magarik*, No. 17-CV-6541 (ER), 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020) (holding that vendor relationships were a trade secret where they took significant time to develop).

Additionally, Plaintiff has demonstrated a likelihood of success on the merits for its claim for misappropriation of trade secrets. The requirements for showing a misappropriation of a trade secret are similar under state and federal law. Under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *N. Atl.*

8

*Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). Similarly, under the Defend Trade Secrets Act ("DTSA"), a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." S*yntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (quoting 18 U.S.C. § 1839(3) (A)–(B)).

As noted *supra*, Plaintiff has sufficiently alleged that the types of information it argues Defendants misappropriated are trade secrets. Moreover, Plaintiff alleges that Defendant Singh obtained its trade secrets by falsely representing he would use this information to obtain funding for Plaintiff from K5, a venture capital firm,[3] and that Defendant Mehta knew the trade secrets were acquired through these improper means when he purportedly then obtained them from Singh and used them to start Sunrise in competition with Plaintiff.  (SAC ¶¶ 5, 19, 23, 71, 73−74, 119-128.); *see* 18 U.S.C. § 1839(5)(A) & (6)(A) (defining "improper means" as a "misrepresentation"); 18 U.S.C. § 1839(B)(5) (defining "Misappropriation" to include not just acquisition by improper means, but also "disclosure or use of a trade secret of another without express or implied consent by a person who ... acquired [knowledge of the trade secret] under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret"); *see also Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.,* 1 F.Supp.3d 224, 273 (S.D.N.Y. 2014) (defining "improper means" as "fraudulent misrepresentations to induce

---

[3] In support of its claim that Singh's representation that he would use Plaintiff's trade secrets to obtain funding (rather than start a competing business) was false, Plaintiff has provided an affidavit in which the principal of K5, Bryan Baum, states, "neither I nor anyone else at K5 ever affirmatively asked [Singh] for any of [Plaintiff's] confidential, proprietary information." (ECF No. 39, at 2.)

9

disclosure"); *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 233 (S.D.N.Y. 1988) (finding a likelihood of success on Plaintiff's trade secrets misappropriation claim where Defendant acquired Plaintiff's trade secretes through improper means). Thus, Plaintiff has demonstrated that it is likely to succeed on its claim for misappropriation of trade secrets for purposes of its application for a temporary restraining order.[4]

## CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Application is GRANTED. It is hereby ORDERED that, sufficient cause having been shown, pending the hearing of Plaintiff's forthcoming application for a preliminary injunction (following expedited discovery), and pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants are temporarily and immediately restrained and enjoined as follows:

(1) Using, disclosing, selling, copying, duplicating, or otherwise employing Plaintiff's trade secrets (i.e., Plaintiff's business strategies, client list, web traffic data, advertising data analytics, revenue and products mix, sales patterns, churn data, customer emails and customer demographic information, customer lifetime values, and information related to Plaintiff's intake flow, pricing structure, average revenue per unit data, insurance authorization process, vendor relations, and Plaintiff's customer acquisition

---

[4] The Court further finds that the balance of hardships is decidedly in Plaintiff's favor and that it would not disserve the public's interest to issue a temporary restraining order enjoining Defendants from using and disclosing Plaintiff's trade secrets. Plaintiff alleges that, due to Defendants' misappropriation, it lost customers as well as key funding opportunities from at least two high profile venture capital firms; as Plaintiff argues, within the venture capital ecosystem the loss of such significant funding opportunities may present an existential crisis for a startup company (SAC ¶¶ 9-11, 25, 129-33, 138.) Conversely, Plaintiff's request for a temporary restraining order only prevents Defendants from using any trade secrets they allegedly misappropriated from Plaintiff; it does not shut down, or otherwise harm, Defendants' nascent telehealth company. *See Estee Lauder Companies Inc. v. Batra*, 430 F.Supp.2d 158, 182 (S.D.N.Y. 2006) (finding that the balance of hardships was decidedly in Plaintiff's favor where issuing an injunction that effectively prevented Defendant's use of Plaintiff's trade secrets would protect Plaintiff from suffering irreparable harm but not impair Defendant's ability to earn a livelihood).

      costs and channel-by-channel marketing analysis), including through using or employing any documents, files, platforms, websites, systems, or other information that is derived from Plaintiff's trade secrets; and

(2) Defendants, and anyone acting in concert with Defendants, are enjoined from erasing, replacing, destroying, transferring, moving, or otherwise disposing of Plaintiff's trade secrets (i.e., Plaintiff's business strategies, client list, web traffic data, advertising data analytics, revenue and products mix, sales patterns, churn data, customer emails and customer demographic information, customer lifetime values, and information related to Plaintiff's intake flow, pricing structure, average revenue per unit data, insurance authorization process, vendor relations, and Plaintiff's customer acquisition costs and channel-by-channel marketing analysis) from their present location, absent further order of this Court.

In light of the Court's granting of Plaintiff's request for limited discovery, the matter will be referred to Magistrate Judge Judith C. McCarthy to preside over General Pretrial, specifically all discovery matters. The parties are directed to confer and submit to Magistrate Judge McCarthy a proposed order for reciprocal limited, expedited discovery that seeks discovery within the time frame of August 2020 through November 2022.

      Further, pursuant to Federal Rule of Civil Procedure 65(b)(2), whereby a temporary restraining order may be extended for good cause beyond the original 14 days, the Court hereby finds good cause for an extension based on: (1) the meritorious issues raised in Plaintiff's moving papers in support of the TRO, and (2) the need for limited discovery in this matter. Therefore, the Court extends the TRO an additional 14 days, for a total of 28 days, through March 3, 2023. It is

also ORDERED that Plaintiff is not required to provide an undertaking in support of the restraining order.

Dated: February 3, 2023
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge